1
2
3
4          **UNITED STATES DISTRICT COURT**
5          **DISTRICT OF NEVADA**
6

| | |
|---|---|
| 7  MIGUEL ANGEL ARIZMENDI MARTINEZ, | Case No. 2:21-cv-01199-GMN-NJK |
| 8        Plaintiff(s), | **Order** |
| 9  v. | [Docket No. 26] |
| 10  SMITH'S FOOD & DRUG CENTER, INC., | |
| 11        Defendant(s). | |

12          Pending before the Court is Plaintiff's motion to withdraw admissions.  Docket No. 26.

13  Defendant filed a response in opposition.  Docket No. 33.  Plaintiff filed a reply.  Docket No. 35.

14  The Court held a hearing on May 18, 2022.  Docket No. 37.[1]  For the reasons discussed below, the

15  motion to withdraw admissions is **GRANTED** subject to the conditions provided herein.

16  **I.      BACKGROUND**

17          This case involves an incident in a grocery store in which Plaintiff alleges he was injured

18  by a cart being pushed by an employee.  *See* Docket No. 30 (video footage).  Plaintiff brought suit

19  in state court for negligence.  Docket No. 1-1.  The case was removed to federal court on the basis

20  of diversity jurisdiction.  Docket No. 1.

21          On June 29, 2021, the parties engaged in the conference required by Rule 26(f) of the

22  Federal Rules of Civil Procedure.  Docket No. 6 at 1.  That same day, Defendant served Plaintiff

23  with requests for admission.  Docket No. 26-4.  The requests for admission are as follows:

24
25
26
27
─────────────────
28  [1] A transcript of the hearing has not been prepared.  Citations herein will be to the hearing
recording with notation of the particular time being referenced.

1

**REQUEST NO. 1:**

Regarding your alleged incident at the SMITH'S store located at 350 North Sandhill Boulevard, Mesquite, Nevada on or about December 31, 2018 (hereinafter "the incident"), admit that the incident involves you being bumped by a cart.

**REQUEST NO. 2:**

Admit that you standing [sic] still when you were bumped.

**REQUEST NO. 3:**

Admit that you saw the cart prior to the incident.

**REQUEST NO. 4:**

Admit that you heard the cart prior to the incident.

**REQUEST NO. 5:**

Admit that you took no action avoid [sic] the incident.

**REQUEST NO. 6:**

Admit that you did not take any action to avoid being bumped by the cart in question.

**REQUEST NO. 7:**

Admit that after the impact, you fell to the ground.

**REQUEST NO. 8:**

Admit that prior to the incident, you were aware of the cart approaching and did not make any attempt to avoid the incident.

**REQUEST NO. 9:**

Admit that the shopping cart being pushed gave off noise that you heard prior to being bumped by the cart.

**REQUEST NO. 10:**

Admit that you did not receive any medical treatment after the incident until January 7, 2019.

**REQUEST NO. 11:**

Admit that at least some of the medical treatment/care you are alleging as a result of the incident is related to other accidents or preexisting conditions.

**REQUEST NO. 12:**

Admit that there are no activities, exercises, or tasks that you were able to perform prior to the incident which you could not perform after the incident.

**REQUEST NO. 13:**

Admit that prior to the incident you received medical treatment or care for your left knee.

**REQUEST NO. 14:**

Admit that the incident merely aggravated your pre-existing medical condition/s.

**REQUEST NO. 15:**

Admit that the injuries you allege were caused by the incident have been totally resolved by the treatment/care you have already received subsequent to the incident.

**REQUEST NO. 16:**

Admit that prior to December 31, 2018, you had felt pain and/or discomfort in your left knee.

**REQUEST NO. 17:**

Admit that prior to December 31, 2018, you had treated with a healthcare provider for problems with your left knee.

**REQUEST NO. 18:**

Admit that the medical treatment and/or care you are claiming you received as a result of the incident is not related, in whole or in part, to the injuries you allegedly sustained during the incident at SMITH'S.

**REQUEST NO. 19:**

Admit that prior to December 31, 2018, you had treated degenerative arthritis in your left knee.

**REQUEST NO. 20:**

Admit that the medical treatment your received after the December 31, 2018 incident was for exacerbation of preexisting conditions.

**REQUEST NO. 21:**

Admit that you do not need future treatment and/or care to treat the injuries you allege were caused by the incident.

**REQUEST NO. 22:**

Admit that after seeing Dr. Bascharon on January 7, 2019, you have received [sic] any physical therapy for your left knee.

**REQUEST NO. 23:**

Admit that other than seeing Dr. Bascharon on January 7, 2019 and on February 5, 2019, you have not received any other conservative treatment to avoid having surgery on your left knee.

**REQUEST NO. 24:**

Admit that after the incident on December 31, 2018 and other than seeing Dr. Bascharon on January 7, 2019 and on February 5, 2019, you did not receive any other treatment to your left knee to attempt to avoid having surgery in 2020.

**REQUEST NO. 25:**

Admit that you failed to follow medical advice from your doctor to avoid surgery to your left knee.

**REQUEST NO. 26:**

Admit that the surgery to your left knee in 2020 was necessary, in part, to repair preexisting pathology in your left knee.

**REQUEST NO. 27:**

Admit that the surgery performed to your left knee in 2020 was not proximately caused by the incident at SMITH'S on December 31, 2018.

**REQUEST NO. 28:**

Admit that no medical expert has given an opinion that any of the pathology corrected in the surgery to your left knee in 2020 was proximately caused by the incident at SMITH'S on December 31, 2018.

**REQUEST NO. 29:**

Admit that you are not asserting a claim for lost wages as a result of the incident.

Docket No. 26-4 at 3-5.

These requests for admission were served on June 29, 2021.  Docket No. 22-2.  The deadline to respond to the requests for admission expired 30 days later.  Fed. R. Civ. P. 36(a)(3).  It is undisputed that responses were not provided by that date.  It is also undisputed that the requests were therefore deemed admitted by operation of the rules.  *See* Docket No. 26 at 6.

During this time period, Plaintiff shuffled her counsel in this matter through which Attorney Darren Lach became counsel of record.  *See id.* at 3.  On August 30, 2021, Plaintiff (through Attorney Lach) served responses to the requests for admission.  *Id.*  On September 2, 2021, defense counsel requested a meet-and-confer on those responses because, *inter alia*, they were untimely.  *See, e.g.*, Docket No. 26-6.

On September 3, 2021, Defendant agreed to forego its timeliness objection if supplemental responses were served by September 6, 2021.  Docket No. 26 at 4.  This date was of significance because it was the day before Plaintiff's deposition.  *See id*.  Hence, Defendant's agreement to not object to late responses was predicated on obtaining supplemental responses before the deposition.  *See, e.g.*, Docket No. 26-7 (writing by defense counsel that Plaintiff "did not fulfill [his] *part of the agreement*" to provide supplemental responses by that date (emphasis added)); *see also* Docket No. 22 at 4 (representation from defense counsel that Plaintiff's counsel "promised" to provide the supplemental responses before the deposition).[2]  It is undisputed that supplemental responses were not provided by that deadline or before Plaintiff's deposition in general.  Docket No. 26 at 4.

On September 9, 2021, Plaintiff served the supplemental responses.  *See* Docket No. 26-8 at 13.  On September 9, 2021, defense counsel made clear in writing that the supplemental responses were untimely and that the requests were deemed admitted by operation of the rules.

---

[2] For the first time at the hearing, Plaintiff argued that there was no "agreement" and no "deadline" by which to provide the supplemental responses, and that Plaintiff had no obligation to provide supplemental responses by September 6, 2021.  *See, e.g.*, Hearing Rec. at 11:40-11:45 a.m., 12:05-12:08 p.m., 12:12-12:13 p.m., 12:40 p.m.  Defendant could not effectively rebut this new argument because, *inter alia*, the defense counsel arguing the motion was not the attorney engaged in the underlying discussions.  By raising this argument for the first time at the hearing, Plaintiff has waived it.  *See, e.g.*, *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1075 n.4 (9th Cir. 2016).

Docket No. 26-7.  Defense counsel indicated that Plaintiff must obtain relief from his admissions by filing a motion to withdraw with the Court.  *Id.*  Plaintiff did not file a motion at that time.

On February 10, 2022, discovery closed.  *See* Docket No. 17 at 3.  On March 11, 2022, the deadline for dispositive motions expired.  *Id.* at 4.

On March 14, 2022, Plaintiff filed his initial motion to withdraw his admissions.  Docket No. 18.  That motion was denied without prejudice.  Docket No. 25.  On April 21, 2022, Plaintiff renewed the motion to withdraw his admissions.  Docket No. 26.

Trial is set for October 17, 2022.  Docket No. 29.

## II.   STANDARDS

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, a party may serve on another party a written request to admit the truth of any matter within the scope of Rule 26(b)(1).  A failure to timely respond results in the automatic admission of the matter.  Fed. R. Civ. P. 36(a)(3).  As such, "[e]very civil practitioner knows that a set of requests for admissions is a grenade with its pin pulled:  the failure to serve timely denials can blow up a case." *Lewis v. Caesars Ent. Corp.*, 2018 WL 2741041, at *3 (D. Nev. June 7, 2018).

Rule 36(b) of the Federal Rules of Civil Procedure provides a reprieve from that danger, however, allowing for the potential to withdraw admissions.  "[T]wo requirements must be met before an admission may be withdrawn: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001).  The party seeking withdrawal of admissions bears the burden of satisfying the first prong of the test.  *See, e.g.*, *McNamara v. Hallinan*, 2019 WL 6122003, at *3 (D. Nev. Oct. 28, 2019).  The party opposing withdrawal of admissions bears the burden of satisfying the second prong of the test.  *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007).

Even where both requirements have been satisfied, Rule 36(b) is "permissive" and does not mandate withdrawal of the admissions.  *Id.* at 624-25.  Moreover, the Ninth Circuit has urged district courts "to be cautious in exercising their discretion to permit withdrawal or amendment of an admission." *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).  In determining whether to

exercise its discretion to allow withdrawal, courts may consider the reason for the delay and whether the moving party appears to have a strong case on the merits. *Conlon*, 474 F.3d at 625. Courts may also consider whether the circumstances warrant alternative sanctions, including an order imposing a monetary fine or requiring payment to the opposing party for increased expenses, in conjunction with an order allowing admissions to be withdrawn. *Hadley v. United States*, 45 F.3d 1345, 1350 (9th Cir. 1995).

**III.   ANALYSIS**

        A.        Admissions not in Dispute

        The Court begins by addressing those admissions that are not in dispute. Regardless of the outcome of the motion, Plaintiff has indicated that he would admit Request Nos. 1, 2, 5, 7, 10, and 29. Docket No. 26 at 7 n.2. Moreover, Defendant has withdrawn Request No. 22. Hearing Rec. at 1:00 p.m. As such, there is no need for the Court to opine on whether the correlated admissions should be withdrawn.

        In addition, the Court finds that there is no meaningful dispute with respect to the admission for Request No. 6. That request indicates that Plaintiff "did not take any action to avoid being bumped by the cart in question." Plaintiff admits the gist of the request, but he seeks to withdraw his admission because he disagrees with the use of the word "bumped." *See* Docket No. 26-8 at 4; *see also* Hearing Rec. at 12:58-12:59 p.m. "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *Jones v. Zimmer*, 2014 WL 6772916, at *7 (D. Nev. Dec. 2, 2014) (quoting United *States ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 684 (E.D. Cal. 2006)). Instead, the parties should stipulate to alternative wording. *Id.* Given the semantic dispute as to the word "bumped," Plaintiff is deemed to have admitted that he "did not take any action to avoid the cart in question."

        Accordingly, Request Nos. 1, 2, 5, 6, 7, 10, 22, and 29 do not require further discussion.

        B.        Presentation of the Merits of the Action Must be Subserved

        The first prong of the test requires a showing that presentation of the merits of the action will be subserved. *Sonoda*, 255 F.3d at 1039. This part of the test is satisfied when "upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon*,

1   474 F.3d at 622 (quoting *Hadley*, 45 F.3d at 1348).   While not necessarily case-dispositive, district

2   courts have found a sufficient showing is made when admissions go to core issues that would in

3   large part resolve the case.  *McNamara*, 2019 WL 6122003, at *4 (citing *Del Mar Land Partners,*

4   *LLC v. Stanley Consultants, Inc.*, 2012 WL 5392230, at *2 (D. Ariz. Nov. 5, 2012) and *Finjan,*

5   *Inc. v. Sophos, Inc.*, 2016 WL 2988834, at *16 (N.D. Cal. May 24, 2016) (collecting cases)).[3]

6        The admissions in dispute address significant issues in this case: (1) comparative

7   negligence (Request Nos. 3, 4, 8, and 9); (2) existence of preexisting medical conditions (Request

8   Nos. 13, 14, 16, 17, and 19); (3) treatment for preexisting conditions (Request Nos. 20, 26); (4)

9   lack of causation (Request Nos. 11, 18, 27, and 28); (5) lack of care to avoid surgery (Request

10  Nos. 23, 24, and 25); (6) lack of need for future medical care (Request Nos. 15 and 21); and (7)

11  lack of change in functionality following the incident (Request No. 12).  Plaintiff has sufficiently

12  shown that these admissions go to core issues that would in large part resolve the case.  Most

13  significantly, causation is an element of Plaintiff's negligence claim.  *See, e.g.*, *Torres v. Bodega*

14  *Latina Corp.*, 2020 WL 125831, at *2 (D. Nev. Mar. 16, 2020) (quoting *Sanchez v. Wal-Mart*

15  *Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009)).  Admitting that proximate causation is lacking will

16  preclude recovery for the subject injuries, so Plaintiff has satisfied the first prong of the test with

17  respect to the causation admissions.  *Conlon*, 474 F.3d at 622 (holding that first prong of test was

18  satisfied for admissions of lack of causation).  While the other admissions are not necessarily case-

19  dispositive, they address core issues.  For example, two of the admissions (for Requests No. 15

20  and 21) effectively destroy Plaintiff's claim for damages for future medical care, which would

21  preclude recovery on the bulk of medical damages claimed in this case.  Docket No. 24-2 at 16.

22       Accordingly, Plaintiff has met his burden with respect to the presentation on the merits.

23

24

25       [3] Particularly at the hearing, counsel presented divergent views as to what this requirement
    means and how it is met.  Plaintiff essentially argued that the first prong is met for any admission
26  that he plans to dispute at trial with contrary evidence, while Defendant essentially argued that the
    first prong is met only in instances in which the admissions are case-dispositive.  The case law on
27  the issue is not a model of clarity or consistency.  This Court and others have considered this
    requirement met for admissions that "go to core issues that would in large part resolve the case."
28  *McNamara*, 2019 WL 6122003, at *4.

C.    Lack of Prejudice to The Party who Obtained the Admissions

Plaintiff having satisfied the first prong of the pertinent test, the Court turns to whether Defendant has established prejudice in allowing withdrawal of the admissions. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth.'" *Hadley*, 45 F.3d at 1348 (quoting *Brook Village N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)). "'Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Id.* A lack of discovery, without more, does not constitute prejudice. *See Conlon*, 474 F.3d at 624. Prejudice is more likely to be found where the motion for withdrawal is made during trial or when trial is imminent. *See id.*; *Hadley*, 45 F.3d at 1348.

The second step of the test is a close call here. There is no doubt that Defendant has been prejudiced as a general matter. It relied for months on Plaintiff's admissions and fashioned its litigation strategy based on those admissions. *See, e.g.*, Hearing Rec. at 12:32-12:34 p.m. Moreover, reopening discovery is prejudicial to the non-moving party as a general matter. *See, e.g.*, *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Nonetheless, the analysis in the Rule 36(b) context focuses on prejudice <u>at trial</u> and the Ninth Circuit has indicated that reopening discovery may be a means to ameliorate prejudice at trial. *Conlon*, 474 F.3d at 623. Reopening discovery may be appropriate for Rule 36(b) purposes when the nonmovant can obtain discovery without the need to continue the trial date. *See id.*

Defendant acknowledged at that hearing that there may be sufficient time before trial to obtain discovery in the event the admissions are withdrawn. Hearing Rec. at 1:02-1:03 p.m., 1:12-1:13 a.m.[4] The Court is inclined to agree with that assessment, particularly given that Plaintiff's counsel represented that he will go beyond his typical discovery obligations to ensure Defendant obtains the discovery it needs before trial, including Plaintiff himself obtaining documents from Mexico for Defendant. Hearing Rec. at 1:32 p.m. ("even if the order of the Court is that Plaintiff

---

[4] As noted above, trial is set for October 17, 2022. Docket No. 29. Moreover, at least some of the discovery will be from sources in Mexico. Whether it is feasible to complete discovery before trial is difficult to discern with confidence.

needs to get medical records (or whatever is available of the record) from Mexico, irregardless [sic] if it has to do with this injury in this case or not, then Plaintiff will get those records and produce it [sic] ourself [sic]").  Moreover, the Court finds that the financial prejudice to Defendant in allowing the admissions to be withdrawn can be lessened through the imposition of monetary sanctions.  *See Hadley*, 45 F.3d at 1350; *see also Weiner v. McCoon*, 2007 WL 9776578, at *2 (S.D. Cal. July 27, 2007).

In light of Plaintiff's affirmative assistance in obtaining discovery in Mexico for Defendant and the monetary sanctions that will be imposed, the Court finds that Defendant has not established prejudice for the purposes of the Rule 36(b) analysis.  Discovery will be reopened for Defendant.

### D.   Discretionary Factors

Having determined that the two required elements of the test have been met, the Court turns to analyzing whether it should exercise its discretion to allow withdrawal of the admissions.  The Ninth Circuit has specifically looked at the reason for the delay and whether the movant has a strong case on the merits.  *Conlon*, 474 F.3d at 625.  As with the analysis above, it is a close call whether the circumstances warrant withdrawal of the admissions.  The Court will err on the side of the case being decided on its merits and will allow withdrawal.

#### 1.   Strength of the Movant's Case

Plaintiff touts that his case is a slam dunk.  *See, e.g.*, Docket No. 26 at 13-14.  The Court does not share that view.  Most significantly, the incident as shown on the surveillance footage does not appear to involve a particularly significant impact or fall.[5]  After less than 90 seconds, Plaintiff rose from the floor (with assistance) and then continued along his way through the store.  While no one can predict with precision how a jury will view the evidence, the Court is not as confident as Plaintiff is in his chances of success.  If nothing else, a jury may be reluctant to award significant damages given the circumstances of this case.  This discretionary factor is neutral.

---

[5] The Court finds Plaintiff's behavior leading up to the incident to be odd.  Plaintiff placed his cart and himself in a manner that effectively blocked the grocery aisle for several minutes while he seemed to mostly stare into the freezer oblivious to those around him and the obstruction he had created.  Whether this behavior will impact the jury's view on liability is unclear.

2.      Good Cause for the Delay

The Court next turns to the reason for Plaintiff's delays with respect to these requests for admission.  Plaintiff's counsel advances various excuses for his failures to competently litigate this case.  With respect to the initial failure to respond to the requests for admission, he blames a change of counsel and some communication miscues.  *See* Docket No. 26 at 3.  With respect to the failure to meet the agreed-upon deadline for supplemental responses, Plaintiff's counsel indicates that he was "*forced*" to provide childcare for his own offspring for a few days while his spouse was unable to do so.  *Id.* at 4 (emphasis added).  With respect to his failure to see the letter sent on September 9, 2021, Plaintiff's counsel indicates that he did not review it because a staff person simply placed it in the litigation file while counsel was distracted by news of his spouse's pregnancy.  *See id.* at 5; *see also* Hearing Rec. at 12:07-12:08 p.m.  These are not particularly compelling excuses for failing to fulfill a lawyer's most basic duties.

Ultimately, however, the delay of most concern is counsel's failure to file a motion to withdraw for six months after receipt of the letter of September 9, 2021.[6]  Why counsel did not review the litigation file or otherwise discern a need to file this motion for six months is somewhat obscured, but the gist is that counsel was addressing serious physical and mental conditions experienced by his spouse during part of this time.  *See, e.g.*, Hearing Rec. at 12:09 p.m.  It is difficult to discern how the identified events account for six months during which counsel did not review his litigation file.  Nonetheless, and particularly given that courts have a strong preference that cases be decided on their merits when feasible, *see, e.g.*, *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986), the Court will afford counsel the benefit of the doubt on this particular issue, at least insofar as finding that the admissions may be withdrawn.

Accordingly, the Court will exercise its discretion to allow the admissions to be withdrawn subject to the conditions set forth herein.

---

[6] Courts within the Ninth Circuit have viewed the delay in filing the motion as part of the Rule 36(b) analysis.  *See, e.g.*, *Am. Gen. Life & Acc. Ins. Co. v. Findley*, 2013 WL 1120662, at *5 (C.D. Cal. Mar. 15, 2013).

### E.    Monetary Sanctions

When a court considers allowing withdrawal of admissions, it may impose alternative sanctions related to that relief. *Hadley*, 45 F.3d at 1350; *see also Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991). "Fairness requires the party responsible for the error [in failing to timely respond to requests for admission] to bear the costs of the mistake." *Belfor USA Grp., Inc. v. R.J. Kenney Assocs., Inc.*, 2004 WL 2980185, at *2 (D. Alaska Dec. 3, 2004). The Ninth Circuit has expressly noted that the movant or his attorney may be required "to pay a substantial monetary fine and/or the [opposing party's] increased costs and expenses" arising from admissions being withdrawn. *Hadley*, 45 F.3d at 1350. Such monetary relief may include the expenses associated with opposing a motion to withdraw and the expenses associated with reopening discovery. *See, e.g.*, *Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*, 2015 WL 7188227, at *4 (E.D. Cal. Nov. 16, 2015); *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 2013 WL 3155318, at *5 (D. Nev. June 18, 2013); *Gen. Ins. Co. of Am. v. Rhoades*, 196 F.R.D. 620, 626-27 (D.N.M. 2000).

As noted above, Plaintiff has shown grounds to withdraw admissions by the skin of his teeth. The entire situation exists because Plaintiff's counsel had a series of miscues in failing to timely comply with deadlines and failing to timely move for relief. Plaintiff's counsel's conduct resulted in additional expenses to Defendant in briefing the initial and renewed motions to withdraw admissions, preparing for and attending the lengthy hearing on the renewed motion to withdraw admissions, and conducting discovery that would otherwise be unnecessary. Given the circumstances, the Court orders Plaintiff's counsel to pay $5,000 to Defendant.[7]

## IV.    CONCLUSION

For the reasons discussed more fully above, Plaintiff's motion to withdraw admissions is **GRANTED** subject the conditions established herein. Discovery is reopened for Defendant only

---

[7] The Court declines to impose a separate fine payable to the Court, although it would be within its discretion to do so in the circumstances. *See, e.g.*, *United States v. Wanland*, 2015 WL 9434778, at *6 (E.D. Cal. Dec. 24, 2015).

until September 15, 2022.[8,9]  Plaintiff and Plaintiff's counsel must affirmatively assist in obtaining

discovery in Mexico.  Plaintiff's counsel must pay Defendant $5,000 by June 29, 2022.

       IT IS SO ORDERED.

       Dated: June 15, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

---

[8] The Court anticipates that there should be no discovery-related motion practice.  To the extent motion practice is necessary following an appropriate meet-and-confer, any such motion must be filed without undue delay and no later than September 16, 2022.

[9] Counsel must confer on whether Defendant will obtain new experts during this period and, if it does, as to an appropriate schedule for any expert discovery to be completed within the period established herein.